MONFORTON v. DETROIT PRESSED BRICK CO.

1. MANUFACTURING COMPANIES—DANGEROUS MACHINERY—SAFE-
   GUARDS—DUTY TO PROVIDE.
   The statutory duty imposed upon manufacturers by Act No.
   126, Pub. Acts 1893, §§ 11, 12, to provide certain safeguards
   for machinery in the discretion of the factory inspector, does
   not exist until the inspector has declared such safeguards
   necessary.

2. MASTER AND SERVANT—UNCOVERED SHAFT—NEGLIGENCE.
   No recovery can be had against an employer for the death of an
   employé 14 years of age, resulting from his coming in con-
   tact with an uncovered revolving shaft, where the deceased
   had no duties to perform with or about the shaft; and had
   been warned to keep away from it.

Error to Wayne; Carpenter, J.   Submitted April 14,
1897.   Decided May 25, 1897.

Case by Mary E. Monforton, administratrix of the
estate of Charles Monforton, deceased, against the Detroit
Pressed Brick Company, to recover damages for the death
of plaintiff's intestate, alleged to have been caused by de-
fendant's negligence.   A verdict for plaintiff was vacated
by the court, and judgment entered for defendant.   Plain-
tiff brings error.   Affirmed.

B. T. Prentis, for appellant.

Robert Young, for appellee.

MOORE, J.   Charles Monforton was on March 20, 1894,
killed in defendant's brick yard by an uncovered rapidly
revolving shaft.   This suit was brought by his mother,
who had been appointed administratrix, to recover dam-
ages for his death.   After the testimony was all in, the
defendant requested the trial judge to direct a verdict in
its favor.   The court declined to do this, but upon his

own motion submitted this question to the jury: "Was the uncovered shafting open to Charles Monforton's observation during the period of about 20 days in which he was in defendant's employ before his death?" and directed the jury to answer the question "Yes." He then submitted the case to the jury, who returned a verdict in favor of the plaintiff; then, upon motion of the defendant, set the general verdict aside, and entered a verdict upon the special finding in favor of the defendant. Plaintiff appeals.

It is evident from an inspection of the record that the learned trial judge was in doubt whether the plaintiff had made a case or not, and desired to resolve that doubt before directing a verdict in favor of the defendant; that afterwards he concluded a verdict ought to have been directed in favor of the defendant, for that is the practical result of what was done by him. We shall dispose of the case as though he had directed a verdict in favor of the defendant. If there was any testimony which required the case to be submitted to the jury, the judgment should be set aside; otherwise it should stand. All of the testimony is returned with the record, from which it appears that Charles Monforton, at the time of his death, was 14 years and 8 months old. He was an intelligent boy. One of the witnesses speaks of him as a smart boy. He had never worked in a place where there was shafting or machinery until he entered the employ of defendant on the 1st day of March. The accompanying rough sketch will illustrate the situation of the brick yard.

Young Monforton was employed from March 1st to March 16th in the press room, dusting off bricks with a brush. That was all he was engaged to do at that time. There was testimony tending to show that upon the morning in question he and two other boys were employed to unload a car load of wood. The wood was taken from a car, and placed in a cart, Vivian working in the car, and Kumm driving. They started from southwest of the yard, drove east along a wagon road which runs along the

south part of the yard, then north around the east end of the shaft, and then west back to the door of the boiler room, where they unloaded the wood; returning the same way. After Vivian and Charles unloaded the wood, they went into the press room. There was testimony tending to show that Mr. Heileman, foreman of the press room, sent Charles from there to the engine room for some oil. The engineer testified that, about a half hour after Charles got through hauling the wood, he came in and said Mr. Heileman had sent him for oil; that he had come for oil before; that he did not give him the oil, so he went out, and the engineer thought he would come back, and he would give him the oil. He went westerly towards the press room. Soon after the engineer heard that a boy was killed. He ran at once to the shed 50 to 100 feet from the engine room, and found the boy right underneath the shaft in the shed. The shaft was about 200 feet long and 2½ or 3 inches in diameter, and was from 12 to 16 inches from the ground. Just above where the boy was found there was a collar about an inch thick around the shaft, with a set screw which projected through the collar three-quarters of an inch or more. The boy received injuries from the effects of which he died in about an hour. The injuries were received in a shed which was originally closed at the back and ends and open at the front, and was only used for the storage of truck. Some witnesses said some of the boards were off the shed. The shed was not in the regular line of travel between the press room and the engine room. There was a sign over the entrance, "No Admittance." There was no occasion for persons to go into the shed. No one saw the accident, or knows how it occurred, or what motive induced young Monforton to go to the shed.

The evidence also discloses that, six or seven days before the accident, one of the workmen saw young Monforton playing with the shaft by putting his hands upon it, and by throwing boards at the shaft, and letting them fly back, and warned him of the danger. The foreman of

the press room, who had been told of his playing with the shaft, warned him to keep away from it. The shaft was put up in 1890, and the foreman testified there had never been any accident there, to his knowledge, though the engineer testified that a small piece was torn out of his trousers at that point when he had gone there to oil a bearing. There was testimony to the effect that some of the workmen sometimes went into the shed to eat their dinners. There is no testimony in the record that there was any occasion incident to the employment in which he was engaged that required young Monforton to go into the shed, or go near the shaft where the accident occurred. His work was all a good many feet away from it. Nor was he required to go near the shaft in going to and from his work.

It is the claim of the plaintiff that defendant is guilty of negligence because it did not protect the shaft as required by sections 11 and 12 of Act No. 126, Pub. Acts 1893. No factory inspector visited the shop until in May, when, at his suggestion, the shaft was inclosed. A law containing like provisions has so recently been considered by this court that it is not necessary to repeat what was said in that case. *Borck* v. *Michigan Bolt & Nut Works*, 111 Mich. 129.

It is the claim of plaintiff that to leave a shaft in the condition this one was in was negligence, and that the question of whether the deceased was guilty of contributory negligence should have been submittted to the jury; citing a great many cases, all of which have been examined with care. Nearly all of them relate to cases where the injured party was employed in running hazardous machinery, or where he was put at work in such close proximity to dangerous machinery as to make his employment hazardous, but I do not think any of them are in point here. The boy was not employed to work with or about the shaft. His duties did not require him to go anywhere near it. He was advanced sufficiently in years so that he ought to have known that a shaft with a collar upon it, revolv-

ing 150 times a minute, was dangerous.   He was warned
of the danger.   There was nothing in the character of his
duties that would lead his employer to suppose that he
would go near the shaft or incur any danger because of it.
The accident is greatly to be regretted, but it did not
occur under such circumstances as to make defendant
liable.

Judgment is affirmed.

The other Justices concurred.