120   581
f140  ²373

120   581
147   ¹466

MIDDAUGH *v.* MITCHELL.

1. MASTER AND SERVANT—DANGEROUS MACHINERY—ASSUMPTION OF RISK.

An employé in a sawmill assumed the risk incident to working in the vicinity of a rapidly-revolving shaft having a projecting set-screw, where he had been employed for a long time about the mill, and, only two or three days before being caught on the set-screw, had talked with a fellow-employé regarding the danger of injury from that source.

2. SAME — DIRECTIONS OF MASTER.

The fact that a servant is directed to work in a place of especial danger does not render the master liable for resulting injuries, where the danger is entirely familiar to him, and the work is directly in the line of his employment.

Error to Wexford; Aldrich, J. Submitted May 9, 1899. Decided July 5, 1899.

Case by Laverne Middaugh, administratrix of the estate of William Middaugh, deceased, against Austin W. Mitchell and William W. Mitchell, for negligently causing the death of plaintiff's intestate. From a judgment for plaintiff, defendants bring error. Reversed.

*E. Eugene Haskins* and *D. E. McIntyre,* for appellants.

*C. C. Chittenden* and *E. S. Pratt,* for appellee.

MONTGOMERY, J. The plaintiff recovered a verdict and judgment for an alleged negligent injury to her husband, William Middaugh, resulting in his death. The facts appearing on the trial were that on March 2, 1897, defendants were, and for more than 15 years prior thereto had been, copartners operating an extensive lumber manufacturing plant at Jennings, Missaukee county, Mich. On said day they had in their employ George Moore as super-

intendent, and, among other operatives and employés, Frank Woodcook, Alex. Yandon, and William Middaugh. The latter was employed as roustabout, handy man, or extra man to assist in odd jobs, and take the place of any man laid off temporarily, and had worked all around sawmills for upwards of 15 years. On the date mentioned, early in the afternoon, Woodcook, Yandon, and Middaugh were engaged in placing in position in the lower part of the mill an upright shaft with attached disk at its lower end, which had been previously taken out for repairs. The weight of the shaft and disk appears to have been about 500 pounds, and the disk was about 3 feet in diameter. The work of the mill is all performed on the second floor, and the driving machinery, shafts, pulleys, bearings, etc., are all hung or located below in the ground story of the building. This first or ground story is about 12 feet in height.

This disk and shaft had been brought from the depot by the superintendent and these three men, and placed on the lower floor, under its proper place. At this point Moore was called away temporarily, and left the raising of the disk to be proceeded with in his absence. The shaft and disk were then raised, by means of rope and pulley-blocks, to a scaffold about 7½ feet above the floor, and rested there. This scaffold was constructed by utilizing a "running-board" for its east support, and a 2x8 spiked to two posts about 12 feet west of the running-board for its west support, and then placing three or four loose planks east and west across these two supports, and directly under the position of the shaft and disk when in place. The "running-board" is a stationary plank running north and south, from post to post, lengthwise of the mill, about 7½ feet above the lower floor, and is used to walk on in oiling bearings, shifting belts, and other things which would otherwise require carrying a ladder from place to place. The disk and shaft had been pulled up by means of the rope and blocks between these loose planks, and, when of sufficient height, the loose planks were pushed nearer together, and under

the sides of the disk.    In this part of raising the disk, the
rope by which Yandon and Middaugh pulled ran from the
upper sheave down to the floor on the west side of the
running-board.    After the disk was rested on the scaffold,
Woodcook, who worked on the scaffold, pulled the rope
up, and dropped it over and down on the east side of the
running-board, and between the ends of the loose planks,
which extended over the running-board, to the east, some
two feet.    One end of this running-board is against the
west side of a 12-inch post, and the east end of the north
loose cross-plank was some 3 or 4 feet south from this 12-
inch post.

On the south side of this post is a box, which bears the
end of a 3-inch shaft that has a revolution of about 300 to
the minute.    The west end of the shaft runs in this
box, and, as is usual at the end bearing, a 2-inch collar
is secured to the shaft against the east side of the box.
The collar is held on the shaft by means of a set-screw,
which projects from the collar about seven-eighths of an
inch.    It revolves in a square corner formed by the south
face of the post and the east side of the box.    It is seven-
eighths of an inch east from the box, and 2½ inches west
of the east face of the post, and the front or south line of
the box projects out about an inch beyond the periphery
of the revolving set-screw.    It is 4 feet from the bot-
tom of the shaft down to the floor.    This 3-inch shaft
formed the north boundary, and the running-board men-
tioned formed the west boundary, of a clear open space
5 or 6 feet east and west by 10 or 12 feet north and south.

To still further raise the disk, and place the same in
position, Yandon and Middaugh took the rope where it
had been dropped over the running-board by Woodcook,
and proceeded to pull.    Middaugh stood with his back to
the revolving shaft, and Yandon facing him, both stand-
ing near the 12-inch post.    Woodcook was on the scaffold
to guide the upper end of the disk shaft through a hole
in the floor above.    Neither Woodcook nor Yandon saw
Middaugh at the moment of the accident, as Yandon

was looking back upon the scaffold, and Woodcook's attention was directed to guiding the disk shaft. Yandon felt the rope jerked from his hands; Woodcook felt the north loose cross-plank jerked almost from under him; and both turned, and saw Middaugh wound on the revolving shaft near the 12-inch post. From the injuries thus received, Middaugh died in a few hours.

The lower portion of the mill was lighted by windows and an open door. The disk in question was about 20 feet from one window, about 25 feet from another, and about 15 feet from a large door, where teams drive through. Yandon, who was called as a witness for plaintiff, testified that, when a man first comes into the mill from the outside, he cannot see very good, but he further testified that there was no difficulty in seeing the shaft; it could be plainly seen. "I had no difficulty in seeing objects about the mill down there after I was down there a few minutes. Mr. Middaugh had been under there longer than I had."

The plaintiff offered testimony showing that defendants had rebuilt the mill some two years before the accident, and that in most mills of modern construction the set-screws are either covered or counter-sunk. The plaintiff called Mr. Woodcook as a witness. He testified that, on an occasion a month or two before the accident, deceased had filled the place of day-watchman; that it was his duty as day-watchman to oil the box that the shaft in question ran in; and that witness was unable to see how the deceased could have failed to see the collar and set-screw while doing so. This witness further testified that, a day or two prior to the accident, witness and deceased were working together in the basement of the mill, putting up some bents; that, while at work, a Mr. Trickey, an employè, passed under the shaft on which Middaugh was afterwards caught; that deceased and witness had a conversation about it, as to which the witness testified as follows:

" We talked something about the place being dangerous for a man to dodge under there, for he might get caught.

The set-screw was mentioned. We said it was a dangerous place there; there was a set-screw there, and a man dodging under there might get caught."

It further appeared that deceased was an experienced mill man, having worked in a mill for upwards of 15 years. At the conclusion of the testimony, the defendants' counsel asked the court to charge that there could be no recovery.

The plaintiff's counsel state their position in their brief as follows:

"That, under the proof, it was a question of fact for the jury to pass on as to (1) whether the danger was so apparent that Middaugh must be held to have assumed the risk; (2) whether deceased had prior knowledge of the fact that there was a projecting set-screw on the shaft; (3) whether the deceased was not justified in acting on the suggestion of Woodcook in taking his position and doing his work where he did. And we submit, under the law, that the deceased had a right to assume that the place designated was a safe place, and, if it proved otherwise, the fault would be the fault of the defendants, who were represented by Woodcook."

We are unable to assent to these propositions, in view of the testimony in this case. We do not find it necessary to pass upon the first, inasmuch as we think the second cannot be maintained. The undisputed testimony shows that deceased had for a long time been employed about this mill; that at least on one occasion his duties brought him in a position where he should have discovered the set-screw on the shaft; and that he was, not more than two or three days before, informed of the danger, and his attention specifically called to the set-screw. Under these circumstances, the deceased must be held to have assumed the risk, and, if it was negligence to attempt the work in which deceased was engaged, he was himself guilty of contributory negligence. *Michigan Central R. Co.* v. *Smithson,* 45 Mich. 212; *Brennan* v. *Railroad Co.,* 93 Mich. 156; *Perlick* v. *Wooden-Ware Co.,* 119 Mich.

331; *Goodnow* v. *Emery Mills*, 146 Mass. 261; 1 Bailey, Pers. Inj. § 673 *et seq.*

In support of the proposition that deceased was justified in acting on the suggestion of Woodcook, and in taking his position where he did, plaintiff's counsel cite *Walker* v. *Railway Co.*, 104 Mich. 606; *Chicago, etc., R. Co.* v. *Bayfield*, 37 Mich. 205; *Jones* v. *Railway Co.*, 49 Mich. 573. In each of these cases the servant was directed out of the line of his employment by a superior. In the present case the deceased was directly in the line of his employment, so that, if it be considered that Woodcook, in casting the rope down where he did, invited deceased to take a position dangerously near the shaft, the case presented is not at all analogous to the cases cited; on the contrary, if there was fault in that regard, it was the fault of a fellow-servant. The instruction asked by defendants should have been given.

Judgment reversed, and new trial ordered.

The other Justices concurred.