SWICK v. ÆTNA PORTLAND CEMENT CO.

1. MASTER AND SERVANT—SCOPE OF EMPLOYMENT—EVIDENCE.

An "oiler, sweeper and grinder in the wet end" of a cement factory, whose testimony shows that he was expected to do whatever he should be directed to do about the place, held, not ordered to do work not within the scope of his employment when ordered to open a cock in an air pipe with a wrench, a duty he had performed before, and with which he was familiar. Per HOOKER and CARPENTER, JJ.

2. SAME—SAFEGUARDING DANGEROUS PLACES—DUTY OF MASTER —STATUTE—FACTORY INSPECTOR.

Section 5349, 2 Comp. Laws, makes it the employer's duty to safeguard all gearing and belting in his factory, irrespective of whether such safeguards have been ordered by the factory inspector. Per HOOKER and CARPENTER, JJ.

3. SAME — PERSONAL INJURY — PROXIMATE CAUSE — UNGUARDED BELT.

In an action by a servant for injuries caused by his slipping while applying a wrench to a cock in a pipe, and falling upon an unguarded belt, evidence examined, and *held*, that it could not be said that the slipping of the wrench or other cause than the absence of the guard was the proximate cause of the injury. Per HOOKER and CARPENTER, JJ.

4. SAME—ASSUMPTION OF RISK—STATUTORY DUTY.

As the assumption of risk is the result of a contract of employment, and the master cannot legally contract to violate a statute, the servant does not assume the risk due to an omission of a statutory duty on the part of the master. Per HOOKER and CARPENTER, JJ.

5. SAME—CONTRIBUTORY NEGLIGENCE.

The rule that deprives the employer of the defense of assumption of risk, in cases where he has omitted a statutory duty with respect to safeguarding dangerous places to work, does not extend to the defense of contributory negligence, since assumption of risk may be a defense in cases where there is no contributory negligence. Per HOOKER and CARPENTER, JJ.

6. SAME—QUESTION FOR JURY.

In an action by a servant for injuries caused by his slipping into an unguarded belt, evidence examined, and *held*, that whether he was guilty of contributory negligence in falling into the belt was a question for the jury. Per HOOKER and CARPENTER, JJ.

Error to Genesee; Wisner, J. Submitted November 14, 1906. (Docket No. 134.) Decided March 12, 1907.

Case by Andrew D. Swick against the Ætna Portland Cement Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Fred L. Vandeveer*, for appellant.

*W. E. Scott* and *Brown & Farley*, for appellee.

HOOKER, J. The defendant appealed from a judgment in favor of the plaintiff. The error alleged is the refusal to direct a verdict for the defendant.

The plaintiff was a workman in defendant's cement factory. Beneath the floor were vats, the contents of which required agitation. This was effected by the introduction of compressed air conducted to the several vats through iron pipes laid upon the floor, cocks in the pipes being used to cut off the air. On the occasion of the accident the plaintiff was directed to get a wrench and open the cock in the pipe leading to one of the vats. He attempted this, sitting down upon his feet with his back to a large belt running upon pulleys, three and four feet in diameter, respectively. The cock was not easily turned, and in the effort made by the plaintiff to open it, his feet slipped on the greasy floor, or the wrench slipped off and from the cock, or he lost his balance in some other way, and fell across the belt between the pulleys, and was carried by the belt to one of the pulleys and injured. This belt, 10 inches wide, ran upon pulleys located near the floor. A guard over the belt, consisting of a sort of cage made of scantling and boards, had been used, but was temporarily taken away a day or two before the accident to permit the removal of a motor, and was not in place on this occasion, and there was testimony tending to show that the plaintiff did not know of or notice its absence.. The negligence claimed was:

(1) That plaintiff was ordered by the defendant's foreman to do work not within the scope of his employment, the hazards of which were unknown and were not disclosed to him; (2) that the accident was due to defendant's violation of the law requiring that the belt be guarded; (3) that a reasonably safe place to work was not furnished the plaintiff.

The following are the grounds relied upon, in support of defendant's motion to direct a verdict:

"*First*, because the plaintiff was not required to perform services outside of the scope of his employment; *second*, that the risk to the plaintiff was assumed; *third*, that the plaintiff was guilty of negligence to such an extent as to bar and preclude a recovery; *fourth*, that the negligence, if any, was that of a fellow-servant, which

would bar a recovery; *fifth*, that the accident was one unprecedented in the knowledge of the defendant, and, therefore, there was no negligence in failing to provide guards for such an emergency; and, *sixth*, that the proximate cause of the plaintiff's injury was the slipping of the wrench, permitting him to lose his balance and fall between the belt and pulley, rather than the allegations set forth in the declaration."

### Scope of Plaintiff's Employment.

The plaintiff testified that he was employed as an "oiler, sweeper, and grinder in the wet end." The wet end was that portion of the factory devoted to the vats, and was where the accident happened. While in one place in his testimony he used language implying that opening this cock was not expected of him when he was employed, his whole testimony shows beyond cavil that he was expected to do whatever he should be directed to do about the place, and that he so understood his employment and acted accordingly. He had been called upon to open these air cocks before and did so. He knew the greasy character of the floor about the vats, and was entirely familiar with the machinery pulleys and belt, oiling the machinery and shafting, and sweeping and cleaning up the place often. We think it conclusively shown that he was acting within the scope of his employment, and that he was not called to do work that he was not familiar with, and the ordinary dangers of which he did not understand.

### Violation of Law.

It is contended that the defendant violated the law in that it neglected to cover or guard the belt and pulleys as provided by 2 Comp. Laws, § 5349, and therefore that it cannot assert the assumption of risk by plaintiff as a defense:

"It shall also be the duty of the owner of such factory, or his agent, superintendent, or other person in charge of the same, to furnish or supply, or caused to be furnished and supplied, in the discretion of the factory inspector,

where machinery is in use, proper shifters or other mechanical contrivances for the purpose of throwing belts on or off pulleys. All gearing or belting shall be provided with proper safeguards, and wherever possible, machinery shall be provided with loose pulleys. All vats, saws, pans, planers, cogs, set screws, gearing and machinery of every description shall be properly guarded, when deemed necessary by the factory inspector."

The defendant insists that this is not so, inasmuch as a guard had not been ordered by the factory inspector, while plaintiff's counsel urge that the requirement to safeguard pulleys and belts is not limited to cases where ordered by the factory inspector. The cases of *Borck* v. *Nut Works*, 111 Mich. 130, and *Monforton* v. *Brick Co.*, 113 Mich. 43, are cited by defendant's counsel as sustaining their contention. We are of the opinion that they cannot be held to be controlling for the reason that neither case deals with this statute. The former case turned upon two sections of 3 How. Stat., viz., sections 1997c6 and 1997c7. They read as follows:

"1997c6. Sec. 5. It shall be the duty of the owner of such factory, mercantile industry or manufacturing establishment, or his agent, superintendent or other person in charge of the same, to furnish and supply, or cause to be furnished and supplied, in the discretion of the inspector, where dangerous machinery is in use, automatic shifters, or other mechanical contrivances, of throwing on or off belts or on pulleys; and no minor under fourteen years of age shall be allowed to clean machinery while in motion. All gearing and belting shall be provided with proper safeguards.

"1997c7. Sec. 6. That if the heating, lighting, ventilation or sanitary arrangement of any shop or factory is such as to be injurious to the health of persons employed therein, or that the means of egress in case of fire or other disaster is not sufficient or in accordance with all the requirements of law, or that the belting, shafting, gearing, elevators, drums and machinery in the shops and factories are located so as to be dangerous to employés, and not sufficiently guarded, or that the vats, pans or structures filled with molten metal or hot liquid are not surrounded with proper safeguards for preventing accident or injury to

those employed at or near them, after due notice of such defect, said proprietors or agents shall be deemed guilty of violating the provisions of this act."

They were a portion of an act passed in 1889 (Act No. 265, Pub. Acts 1889) under the title—

"An act to regulate the employment and provide for the safety of women and children in mercantile industries and manufacturing establishments, and to provide for the enforcing of the same, and other acts providing for the safety and regulating the employment of said persons."

This act is now found in 2 Comp. Laws, §§ 5365 to 5372, inclusive; sections 5369 and 5370 corresponding with sections 1997c6 and 1997c7.

The case of *Monforton* v. *Brick Co.*, supra, involved another statute; i. e., Act No. 126, Pub Acts 1893. Sections 11 and 12 were the ones relied upon. They read as follows:

" SEC. 11. It shall also be the duty of the owner of such factory, or his agent, superintendent or other person in charge of the same, to furnish and supply, or cause to be furnished and supplied, in the discretion of the inspector, where machinery is in use, automatic shifters or other mechanical contrivances for the purpose of throwing belts on or.off pulleys. All gearing and belting shall be provided with proper safeguard.

" SEC. 12. It shall also be the duty of the owner of any manufacturing establishment, or his agent, superintendent or other person in charge of the same, to furnish and supply, or cause to be furnished and supplied, in the discretion of the inspector, where machinery is in use, belt shifters or other safe mechanical contrivances, for the purpose of throwing belts on or off pulleys; and wherever possible machinery shall be provided with loose pulleys; all vats, pans, saws, planers, cogs, gearing and machinery of every description shall be properly guarded. Exhaust fans shall be provided for the purpose of carrying off dust from emery wheels and grindstones, and dust creating machinery, whenever deemed necessary by the factory inspector. No female under the age of twenty-one years, and no male under eighteen years of age shall be allowed to clean machinery while in motion: *Pro-*

*vided,* That the exhaust fans aforesaid need not be provided in any manufacturing establishment before the end of six months from and after this act shall take effect."

This act is not found in the Compiled Laws of 1897, leading to the inference that it may have been considered repealed. It has no importance in this discussion, except as it shows that the *Monforton Case* arose under a different statute than the one applicable to the present case, and one which clearly limits the statutory duty to cases where the factory inspector has determined the necessity of the safeguard.

In 1895, the act under which the present case is presented was passed. See Act No. 184, Pub. Acts 1895, and this is found in chapter 137, 2 Comp. Laws, though repealed and re-enacted in Act No. 113, Pub. Acts 1901, §§ 8, 18. The sections relied upon are 5349 and 5358. The case turns upon the construction of section 5349. In *Borck* v. *Nut Works,* supra, section 1997c6 (2 Comp. Laws, § 5369) was held to be qualified by section 1997c7 (2 Comp. Laws, § 5370). In the statute which we are required to pass upon there is no section corresponding to 5370, which may be said to limit section 5349, and if we are to hold that the statutory duty depends upon action by the factory inspector, it must be upon a construction of section 5349, unaided by a section similar to 5370. The language of the section indicates a design to make the safeguarding of all gearing or belting, and the provision of loose pulleys where possible, a duty, without reference to the factory inspector, although a preceding sentence in the same section makes the duty of furnishing shifters, etc., dependent upon action by the inspector requiring it. The same may be said of the last sentence in the section, and perhaps this may have been intended to qualify the preceding sentence upon the subject of gearing. We need not pass upon that question. The last sentence is not inconsistent with the former sentence upon the subject of safeguarding belts.

We find it unnecessary to pass upon the question

whether all belts wherever situate must be provided with safeguards or whether that question and the sufficiency of safeguards are questions which should usually be submitted to a jury, for the reason that under the uncontradicted proof this was a belt which was so situated as to require safeguards if any belt would require it, and there being no guards whatever, no question arises upon their sufficiency.

## Proximate Cause.

We should not hold that the unguarded belt was not the proximate cause of the accident. Were we able to say that the guard consisted of two boards nailed to uprights, one below the level of the lower belt, and the other above the upper belt, we would be justified in saying that it conclusively appeared that the guard would have been no preventive of an accident of this kind had it been in its usual place, for it would be apparent that the plaintiff would then have fallen upon the belt between the boards, and would have been as certain to do so and to be carried to the pulley as he was in the absence of the guard; but the testimony was that the witness thought that "the guard was made out of scantlings, that is two pieces, and then I think there was a board running along the side, and a board over the top, and something around the bottom or part way down." In his direct examination the witness said that he thought "one board was near the belt, within two or three inches of it." Furthermore, some photographs were introduced, and while this particular guard was not shown in them, several guards over the gearing were shown. Their construction was similar to that described, and it is a significant fact that these had three strips on a side, one at the top, one at the floor, and another midway between them. This fact, taken in connection with the obvious inefficiency of a guard with no board opposite or between the upper and lower portions of the belt, and the improbability that so useless a cover was provided, justify an inference by the jury that this guard was similar to those shown in the photograph.

Nor should it be said that the slipping of the wrench and not the unguarded belt was the proximate cause of the injury. Manifestly, if this man had not fallen or slipped, or if something out of the ordinary had not happened, he would not have come in contact with the belt; but that is always the case where one is hurt by machinery, something happens which causes him to get against or into it, and this case is not distinguishable, in that respect, from *Swoboda* v. *Ward*, 40 Mich. 420, where a plaintiff stepped into some unguarded cogwheels. See, also, *Ross* v. *Township of Ionia*, 104 Mich. 324; *Simons* v. *Township of Casco*, 105 Mich. 588; *White* v. *Township of Riley*, 113 Mich. 295; *Shaw* v. *Township of Saline*, 113 Mich. 342.

Safe Place, Warning, and Assumption of Risk.

Plaintiff's contention is that by reason of the absence of a guard over the belt the place where he was set at work was not a reasonably safe one. Ordinarily the burden of proving this is upon the plaintiff. See 4 Thompson on Negligence (2d Ed.), §§ 3864, 3865, 3866. He must show that the master has not exercised reasonable care and skill, to the end that the place where he requires his servant to perform labor shall be reasonably safe in view of the situation, circumstances, and use intended. 4 Thompson on Negligence (2d Ed.), §§ 3758, 3774, 3789. If we assume that the removal of the guard rendered the place not reasonably safe we must consider the question: Did the plaintiff accept the risk of the unguarded belt? Counsel contend that the removal of the guard made it the duty of the defendant to warn him of its absence before directing him " to get a wrench and open the cock in the pipe." This duty of warning does not exist where the condition or danger is known, and, as said in 4 Thompson on Negligence (2d Ed.), § 4061:

"The master owes no such legal duty to the servant in respect to dangers which are *open, visible, and obvious to the comprehension of the servant,* considering his

years, experience, and understanding. In the case of an adult servant of sound mind, the rule is understood to be that when the dangers of the employment are visible, so that any man of ordinary intelligence, though not an expert, could not fail to see and comprehend them, an employer is under no legal obligation to warn the servant of their existence."

Again:

"If the master make changes * * * of which the servant is not aware, it is his duty to instruct the servant as to the character of new risks to be run, *unless they are open and visible, or such as by the exercise of ordinary care the servant will see.*" Section 4066.

A long list of authorities will be found cited in the sections referred to, and they sustain the rule that:

"Where the employé is not placed by his employer in a position of *undisclosed* danger, but he is a mature man doing ordinary work, he *assumes such risks as are obvious,* and negligence cannot be imputed to an employer for an accident therefrom." Citing *Kohn* v. *McNulta,* 147 U. S. 241. 4 Thompson on Negligence (2d Ed.), § 4609.

The employer's immunity by these authorities is not made to turn upon the fact that the employé did or did not take heed of the situation. The question is whether the changed condition or danger was obvious. See authorities cited.

Our own decisions are in harmony with the above doctrine. Thus, in *Schroeder* v. *Car Co.,* 56 Mich. 132, where a workman's sleeve was caught in cogwheels, Chief Justice COOLEY said, with the approval of his associates:

"But a controlling fact in this case is that the plaintiff understood perfectly the exposure to which he was subjected, and needed to observe only ordinary care to avoid it."

This case did not turn on the point of contributory negligence, but on the assumption of the risk of *obvious* and known dangers.

In *Smith* v. *Car Works,* 60 Mich. 501, where a laborer

was killed by molten iron coming in contact with ice in a foundry, and the negligence charged was that a passage through which it was carried was so narrow as to be unsafe, the court said, on page 505:

" Of course, this rule would not require the *employer to become responsible* * * * for injuries * * * resulting from those dangers * * * *which can be readily seen by common observation.* Such *risks and the danger* therefrom are *always assumed* by the servant when he engages in the service."

In *Kean* v. *Rolling Mills*, 66 Mich. 277, where an employé was ordered to wipe the rolls of a machine on the wrong side, and he was injured, the court said:

" There is no dispute as to the danger, * * * and it is difficult to understand * * * how he could have been ignorant of it. * * * The plaintiff when he entered the service of the defendant assumed, *not only the usual and ordinary* risks and perils of the service, but *also* such other risks as *become apparent by ordinary observation.*" .

Many authorities are cited.

In *Balle* v. *Leather Co.*, 73 Mich. 158, it was said:

" It is well settled that a servant is held to assume the ordinary risks of the business upon which he enters, so far as those risks at the time of his entering upon the business are known to him, or should be readily discernible by a person of his age and capacity, in the exercise of ordinary care. 1 Shearman & Redfield on Negligence, § 94. The same doctrine is laid down by this court in *Swoboda* v. *Ward*, 40 Mich. 423, and is too well settled to need further discussion."

Mr. Justice CHAMPLIN used similar language in *Fisher* v. *Railway*, 77 Mich. 549. See, also, *Toomey* v. *Steel Works*, 89 Mich. 252; *Wheeler* v. *Berry*, 95 Mich. 250.

In *Ragon* v. *Railway Co.*, 97 Mich. 265, we said:

" The master has a right to expect him [the servant] to be alert to inform himself of existing conditions, and he cannot attack the master from the shelter of unjustifiable ignorance. * * * Actual ignorance will not alone

suffice to charge a master; the ignorance must also be excusable."

In the same case, MONTGOMERY, J., said:

"It was further his duty to *use reasonable* care *in examining his surroundings* before attempting to uncouple the car."

The same duty existed in this case. In *Mackin* v. *Refrigerator Co.*, 100 Mich. 276, where a boy got his hand in knives of a machine, we said:

"It does not appear from the evidence that there was a necessity for giving directions about the method of doing the work, and the most that could have been said to the boy was that he must keep his hands away from the knives, or he would get injured—a fact so patent that a much younger boy should know it."

In *Lamotte* v. *Boyce*, 105 Mich. 545, we said:

"The conduct of the business, including the exigency of the fire, made it necessary for the plaintiff to go upon the boiler. He did so without comment, when directed by the watchman, apparently knowing just how to get there. Had the master himself been there, there would have been no occasion for him to caution the plaintiff that the post was short, for it was obvious, and the most ordinary familiarity with his surroundings could have apprised him of it. It was not the case of a latent or hidden danger, but one which was apparent to the casual observer, and therefore one which the employer had every reason to believe was known by the plaintiff; and the accident was one for which the defendant should not be held liable."

In *Sakol* v. *Rickel*, 113 Mich. 476, we applied the same rule, or that of contributory negligence, and it matters not which, to one who failed to notice so small a thing as a set screw, it appearing that he had opportunity. See, also, *Peppett* v. *Railroad Co.*, 119 Mich. 640; *Juchatz* v. *Alkali Co.*, 120 Mich. 654. In these cases it was the duty of the employer to keep the machines in safe condition; but it was held that the defects were obvious to the

147 MICH.—30.

plaintiffs with ordinary care, and therefore that they could not complain. See *Middaugh* v. *Mitchell*, 120 Mich. 581; *Rohrabacher* v. *Woodard*, 124 Mich. 125; *Bauer* v. *Foundry Co.*, 132 Mich. 537; *McDonald* v. *Steel Co.*, 140 Mich. 401.

In *Welch* v. *Brainard*, 108 Mich. 38, a case where a farm laborer was injured through undermining a stack of ensilage, we said:

"Every adult of ordinary experience must be held to know that ensilage, or any similar article, is to be expected to fall under such circumstances, and a farmer who hires a laborer to do farm work has a right to suppose he knows and understands the law of gravitation. * * * Employer and employé understand that this practice is attended with more or less danger, and the latter assumes the risk, as one incident to the employment, when he consents to do such work in the face of an apparent danger. The defendant had no reason to suppose that plaintiff would be careless. The law does not impose upon the master the burden of this accident, and the court should have directed a verdict for the defendant, as requested."

See, also, *Hathaway* v. *Milling Co.*, 139 Mich. 708. Many cases of injuries from exposed machinery where this rule is applied will be found cited in 4 Thompson on Negligence (2d Ed.), § 4704. See *Kelly* v. *Asphalt Co.*, 93 Ky. 367.

It is strenuously urged that this case differs from others because the guard had been removed without the plaintiff's knowledge. In short it is claimed that the plaintiff's right to recover rests on the proposition that he was so inattentive to his surroundings as not to notice that a belt 10 inches wide, running on pulleys 3 feet or thereabouts in diameter and from 10 to 14 feet apart, was not guarded, although he walked directly up to it, and turning around sat down so near it that when his wrench or feet slipped he fell upon it, and that the master ought to expect and warn against such inattention. We need not speculate upon the question whether he really did fail to observe the

belt.   It is enough that under the authorities cited the defendant had a right to expect that he would see it, as it was obvious to the most casual observer, unless it be for the statute.   We have said this much upon the general subject of safe place and duty of warning an employé because of plaintiff's claim that, *aside from any question arising upon the statute,* his recovery can stand upon these grounds.   We have no hesitation in saying that, under the proofs, the only reason for sustaining this judgment must rest on the statute.

Having reached the conclusion, however, that the defendant neglected the statutory duty of safeguarding this belt, we cannot hold that the plaintiff assumed the risks attendant upon the absence of the guard.   This question was passed in the case of *Sipes* v. *Starch Co.,* 137 Mich. 258, where it was said by Mr. Justice MONTGOMERY, following the case of *Narramore* v. *Railway Co.,* 96 Fed. 298 (48 L. R. A. 68), that, as the assumption of risk is the result of a contract of employment, and as the master could not legally contract to violate a statute, he is not in a position to assert, as against the servant, the doctrine of assumption of risk, even in case the omission of the statutory duty is known to the servant.   So in this case it must be said that the absence of this guard, under the circumstances shown, was a breach of the defendant's statutory duty, and that the plaintiff did not assume the risk attendant upon its absence, for the reason that he could not lawfully contract with his master for the disobedience by the latter of a penal law; and we must therefore say that the plaintiff did not *assume* the risks that attended the absence of the guard, regardless of the master's negligence, and although the plaintiff was free from any negligence contributing to the accident.   It follows that at the least there was evidence tending to show that it was not a safe place upon which the jury might so find, as there was no evidence which would warrant the conclusion that the belt, unguarded as it was, would not be dangerous, if that would make any difference.   If it be conceded, however,

that the failure to comply with the statute was sufficient evidence of negligence (and it is the only evidence tending to show it), and that the plaintiff did not assume the risk attendant upon that negligence, we have still the question of contributory negligence to consider.

### Contributory Negligence.

There are two classes of accidents which accompany negligent conditions. One is where the injured employé is free from negligence; the other where he is not; and where it can be said that, but for his own negligence, the negligence of the master might have caused him no injury. The law is generally understood to be settled to the effect that in the former class of cases the master is liable for the injury, and in the latter not. Manifestly, if it were the rule that there was assumption of risk only in cases where the employé had been shown to have negligently contributed to the injury, there would be no occasion for any doctrine of assumption of risk. Assumption of risk may be a defense in cases where there is no contributory negligence, and where more than ordinary care has been exercised by the employé, and where there may have been negligence by the master, as where he has an unsafe place or defective machinery. In such cases the immunity of the master has nothing else to rest upon except that the employé has contracted to assume the risk of those dangers, and therefore as to those, and to him, the employer is not negligent.

It is suggested in this case that inasmuch as it can be said that the plaintiff did not and could not assume the risk of the absence of these guards, we must go further, and say that this inability excludes the doctrine of contributory negligence. In other words, that, when the master neglects a statutory duty, he at once becomes practically an insurer against injury to which the neglect of statutory duty may have contributed. If this is upon the theory that to hold otherwise would be to deprive the employé of all benefits from the relief from the assumption of

risk doctrine, it seems fallacious, and apparently has no better foundation than that as the master's neglect of a statutory duty forbids him the benefit of claiming a contract that the employé assumed the risk, the latter therefore has a right to assume that the duty has been performed, and owes no duty of care. There seems to be no better reason for saying this in a case where the duty neglected is statutory, than in one where a common-law duty to furnish a safe place or machinery, or to exercise ordinary care, has been omitted. It is to say that because the master and servant cannot lawfully contract for the assumption of the risk of a violation of a statutory duty the corresponding duty of care which the law imposes upon employés may be disregarded, and the right of the employé to rely upon it is forfeited by his neglect of the statutory duty. We know of no authorities supporting this claim. That the rule does not extend so far is shown by the opinion of Mr. Justice Taft in *Narramore* v. *Railway Co.*, supra. That was a case where a brakeman was injured through an unblocked frog in defendant's track. The court held that the statute relieved the plaintiff from the assumption of risk, but very clearly indicated that it did not follow that he was relieved from the duty of care or the consequences of contributory negligence.

In *Knisley* v. *Pratt*, 148 N. Y. 372 (32 L. R. A. 367), the court of appeals held expressly that a servant, by continuing in the employment of a master who is violating the statute passed to protect the servant, does assume the risk of danger from such violation, and cannot make it the ground of recovery.

Mr. Justice Taft disagrees with the legal proposition, but recognizes the correctness of the conclusion, and suggests that it should have been based on contributory negligence. He says:

"The *Knisley Case* which, in our judgment, was wrongly decided, and many others in which a right conclusion was reached, seem to us to confuse an agreement to assume the risk of an employment, as it is known to be

to the servant, and his contributory negligence. That, under certain circumstances, the one sometimes comes very near the other, and cannot easily be distinguished from the other, may be conceded; but, in most case, there is a broad line of distinction, and it is so in this case. For years employés worked in railroad yards in which blocks were not used, and yet no one would charge them with negligence in so doing. The switches and rails were mere perils of the employment. Assumption of risk is in such cases the acquiescence of an ordinarily prudent man in a known danger, the risk of which he assumes by contract. Contributory negligence in such cases is that action or nonaction in disregard of personal safety by one who, treating the known danger as a condition, acts with respect to it without due care of its consequences. The distinction has been recognized by the Supreme Court of the United States. In *Union Pacific R. Co.* v. *O'Brien*, 161 U. S. 441, the court said:

" ' The second instruction was properly refused because it confused two distinct propositions—that relating to the risks assumed by an employé in entering a given service, and that relating to the amount of vigilance that should be exercised under given circumstances.' "

In *Hesse* v. *Railroad Co.*, 58 Ohio St. 167, it was said:

"Acquiescence with knowledge is not synonymous with contributory negligence. One having full knowledge of defects in machinery with which he is employed may use the utmost care to avert the dangers which they threaten."

Mr. Justice Taft, in discussing the case of *Cleveland, etc., R. Co.* v. *Baker*, 91 Fed. 224, said:

" There the action was for damages against a railroad company for injury sustained by reason of a breach of a Federal statute requiring the company to furnish grab irons. The statute, out of abundant caution, expressly provides that the continued service of the employé with knowledge of the breach of statutory duty by the company should not be regarded as an assumption of the risk. The court held that this proviso did not prevent the company from successfully maintaining the defense of contributory negligence. Assumption of risk and contribu-

tory negligence approximate where the danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom. But where the danger, though present and appreciated, is one which many men are in the habit of assuming, and which prudent men who must earn a living are willing to assume for extra compensation, one who assumes the risk cannot be said to be guilty of contributory negligence if, having in view the risk of danger assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences. One who does not use such care, and who, by reason thereof, suffers injury, is guilty of contributory negligence, and cannot recover, because he, and not the master, causes the injury, or because they jointly cause it. Many authorities hold that contributory negligence is a defense to an action founded on a violation of statutory duty, and this undoubtedly is the proper view."

He cites many such cases. See, also, *Grand* v. *Railroad Co.*, 83 Mich. 564 (11 L. R. A. 402), and cases cited.

Probably all would agree that if the evidence conclusively showed that the plaintiff knew that the guard had been removed, the question of contributory negligence would be in the case. Yet it could not be if the effect of the statute is to make the defense of contributory negligence fall with that of assumption of risk. In some cases either of these defenses could be relied on under the proofs; i. e., a man may not only have assumed the risk of danger, but the proofs may also show that he has been negligent. That question—i. e., contributory negligence—is, as a legal proposition, open in this case. Whether it is practically depends upon the proof. Plaintiff's counsel say that it is not, because the plaintiff did not know that the guard was gone. If his conclusion would be right (which we need not say), the premise is begged, for there is testimony tending to show, and from which the jury might well have found, that he did know it, even if it could be said that he was not negligent in not knowing it—a question we leave undetermined. Much of the discussion herein relating to safe place, etc., is applicable here as

bearing upon the question of what constitutes contributory negligence. If there is force in the suggestion that the visibleness of danger, from which an assumption of risk may be inferred, may be such as to prove contributory negligence to the full satisfaction of court or jury, it is unnecessary to express an opinion upon the question.

From the foregoing, it seems to us to follow that if the question of contributory negligence is in the case, it may be decided by the court, if it is conclusively established. If it could not be, a disputable question of fact under the evidence could not be sent to the jury. In either case it would be an immaterial question, for the reason that it would have been eliminated with the question of assumption of risk. Plaintiff's testimony in the case contains an unequivocal statement that he was unaware of and did not notice the absence of the guard. The manner in which the accident happened is not entirely clear. There may be some difference of opinion as to how plaintiff approached the belt, and it is perhaps probable that plaintiff gave no thought to his surroundings or the dangers to be apprehended therefrom. Taking all into consideration, we conclude that the court did not err in allowing the case to go to the jury.

The judgment is affirmed.

CARPENTER, J., concurred with HOOKER, J. MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred in the result.