HOLLINGSHEAD *v.* DETROIT, GRAND HAVEN &
MILWAUKEE RAILWAY CO.

1. MASTER AND SERVANT—CARRIERS—PERSONAL INJURIES.
   Under either Federal or State statute, the liability of a
   common carrier to its injured employee rests upon a
   negligent act. Act No. 104, Pub. Acts 1909 (2 How.
   Stat. [2d Ed.] § 4110 *et seq.*); 35 U. S. Stat. 66.

2. SAME—RAILROADS—WARNING SERVANT.
   It was not actionable negligence on the part of a railroad
   company to fail to warn a helper in the roundhouse of
   the fact that he incurred a danger and risk of injury
   in riding into the roundhouse on the step of the tender
   which only cleared the doorway by ten and a half inches
   at the side, notices having been posted in the roundhouse
   and on the wall, warning employees to keep off the steps
   of engines or cars entering the house, and plaintiff hav-
   ing frequently ridden through the doors on engines of
   different sizes; the danger was obvious and plaintiff
   chargeable with notice of the risk. It was his duty to
   familiarize himself with the situation and obvious dan-
   ger of following the course which led to his injury.

Error to Kent; Brown, J. Submitted April 8, 1914.
(Docket No. 6.) Decided July 24, 1914.

Case by Theodore Hollingshead against the Detroit,
Grand Haven & Milwaukee Railway Company for per-
sonal injuries. Judgment for plaintiff. Defendant
brings error. Reversed; new trial denied.

*Harrison Geer,* for appellant.
*Smedley, Linsey & Lillie,* for appellee.

Plaintiff seeks to recover damages for personal in-
juries sustained by him while employed as a helper

at defendant's Grand Haven, Mich., roundhouse, about 4 o'clock in the morning of March 8, 1912. The roundhouse in use by defendant at that point was built many years ago. There were six doors of a uniform width of 12 feet and a height of 12 feet. A track passed though each door. The track or stall involved in this suit is No. 2. The easterly rail of this track at the nearest point of the door was distant 3.6 feet from the side, and the westerly rail was distant 3.7. The roundhouse was not lighted; the employees, including the plaintiff, each carrying a lantern to enable them to see to properly discharge their duties. Plaintiff, a man of 48 years of age, who had worked as a day laborer all his life, secured employment as a helper in the roundhouse on January 5, 1912. He worked from 6 p. m. to 6 a. m. under one Dalton, who was foreman of the roundhouse. The duty of the crew seems to have been to make slight repairs upon the engines, coal them, and prepare them to go out upon the road again. An engine coming in from the road would be left by defendant's crew near the ash pit; the roundhouse crew would then take it in charge, place it on the turntable, then run it over to the coal dock to be loaded. After that the ashes were cleaned into the cinder pit, and if the engine was to be placed in stalls No. 1 or 2, it would be run north to the switch connecting with No. 1 track, and then backed south into the roundhouse. The engines were operated by one Bahr. It was customary for one of the helpers to go along with the engine when it was taken to the roundhouse in order to turn switches and place a block of wood under the wheels after the engine had been brought to a stop at the proper point in the roundhouse. Plaintiff claims to have been instructed to ride in with the engine. After the engine was stopped it was the duty of the helper to place sand in the dome to be used in braking. Sometimes plaintiff would accompany the engine into the round-

house, and sometimes a fellow helper by the name of Verwy would do so.

On the night of his injury, engine No. 1451 of a type known as a "Jack" engine was placed for the night crew of the roundhouse to prepare for business the next day. After being coaled and having the fire cleaned Bahr backed it south toward the roundhouse. Plaintiff attempted to ride in on the step at the southeast corner of the tender. As the tender passed through the door plaintiff was caught between the side of the tender and the jam of the door; the clearance between the tender and the door jam being but 10½ inches. · Plaintiff weighed approximately 200 pounds. As a result of being caught he sustained severe bodily injuries. Several ribs were broken, and his left hip was crushed. A notice was posted in the roundhouse, and likewise on the wall near the door leading into the machine shop as follows:

"NOTICE.

"Keep off the side steps, or from alongside of engines or cars moving in or out of the roundhouse or shops, as the clearance is limited, and there is danger of being caught."

During the two months that plaintiff was employed he claims never to have seen either of the notices in question, and that his attention was never called to them. He testified, however, that he had been through every door of the roundhouse a great many times; that on an average he would place from three to five engines each night in the roundhouse. Three types of engines were in use by the defendant at this point. The "Cook" tender permitted a clearance of 16½ inches, the "Jumbo" tender approximately 14 inches, while the "Jack" tender afforded but 10½ inches. It was the claim of the plaintiff that he had ridden upon the sides of the tender when placing engines in the roundhouse during all of his employment, but that he never happened to ride a "Jack" tender in until

the night in question, and was not aware that it was wider than the others. The negligence relied upon by plaintiff was the alleged failure of the defendant to instruct and warn plaintiff of the danger of riding into said roundhouse upon said tender, and its failure to inform plaintiff that the tender upon which he was injured was of a greater width than others which he had placed in said roundhouse, and that there was not sufficient space between said tender and the casing of said opening to allow plaintiff to pass without receiving injury. The declaration in each count predicates the liability of defendant under the Federal act relating to the liability of common carriers, and likewise under Act No. 104, Public Acts of 1909 (2 How. Stat. [2d Ed.] § 4110 et seq.). Plaintiff having recovered a judgment, defendant reviews the case in this court by writ of error.

BROOKE, J. (after stating the facts). Touching the first error relied upon, it is sufficient to say that the point is covered by our decision in the case of Fernette v. Railroad Co., 175 Mich. 653 (144 N. W. 834).

Of the other five matters relied upon, we find it necessary to discuss but one, the third. Liability of a common carrier railroad company, under either the Federal or State act, to its employees in case of injury, must be based upon some negligent act of the railroad company. Seaboard Airline Ry. v. Horton, 233 U. S. 492 (34 Sup. Ct. 635). We are of opinion that the failure of the defendant to notify plaintiff of the danger in riding the tender into the roundhouse in the position assumed by him at the time of his injury was not negligence. The danger of assuming such a position upon any of the engines was an obvious one. Plaintiff claims to have ridden through one or the other of these various doors at least 150 times. The clearance between the smallest tender

and the door jam was but 16 inches, a space so small as to render it exceedingly hazardous for an employee to assume a position on the outside of the tender. The point selected by the plaintiff upon which to ride into the roundhouse was not the only place upon the engine he might have boarded. He might, too, have stopped the engine just outside the door and walked in in front of it or followed it in. During the period of plaintiff's employment engines of the type upon which he was injured were frequently in the terminal. The size of the tenders upon these engines was open to his observation, and it was his duty, knowing the width of the door in question, to have taken some care for his own safety. The roundhouse was a permanent structure. The engines to be placed therein went at a very low rate of speed, not faster than a man would ordinarily walk.

The rule which protects railroad employees from the existence of structures upon the right of way too close to the track is not applicable in a case of this character. The case of *Hogan* v. *Railroad Co.*, 209 N. Y. 20 (102 N. E. 555), is in principle exactly like the case at bar. There the court said:

"The respondent relies on the numerous cases in which it has been held negligence to locate structures of various kinds so near the tracks of a railroad as to injure the crews of moving trains. This rule has been held as to spouts of water tanks, mail cranes, signal posts, and the like, and would apply to the case of a doorway so narrow as to endanger the safety of employees while on an engine. But it is not applicable to the present case. The crew of a train are often obliged, in the discharge of their duties, to place some parts of their bodies beyond the limits of the cars or engines. Brakemen on freight trains are obliged to go to the top of the cars, and on many cars to mount by ladders at the side of the cars instead of at the end. Engineers and firemen often are compelled to put their heads out of the cabs, looking for signals. Of course, it would be impossible for one of the crew

on a rapidly moving train to remember the location of the structures or to guard against contact with them. But entry into or exit from a closed building, through a doorway, is a very different matter. Every one going through a doorway must be conscious of its presence and govern his movements in accordance with its size and location. The question really is: 'Is the master required to provide a doorway so large that not only the occupants of the vehicles, but persons holding onto the outside of the vehicles may pass through with safety?' If the rule applies to engines, it would seem to equally apply to other vehicles, and the doors of carriage houses, barns, and the like must be large enough to permit persons standing on the steps of vehicles to pass through. As already said there is no suggestion that the doorway was not sufficient for the safety of the employees in the engine. * * * There was nothing calling upon the deceased to mount the engine at this time or place. The fireman and assistant were operating the engine, had run it into the house, and were running it out. True, the deceased would have been justified in boarding the engine whenever he could do so safely; but the engine was to proceed only 75 feet from the door of the roundhouse to the water tank, where it would be stopped. The deceased had merely to walk after it. If, however, for any purpose, he wished to board the engine, there was no reason why he should not have had it stopped. * * * In the absence of proof that any duty might require an employee to board a moving engine, about to pass through a doorway, the defendant cannot be held guilty of negligence in not providing against such a contingency. It is equally clear that the plaintiff's intestate was, under the circumstances, guilty of contributory negligence."

We must hold that under our own decisions it was the duty of the plaintiff to have familiarized himself with the situation and the obvious danger of following the course which led to his injury, and that it was not negligence of the defendant to fail to warn him. *Pahlan* v. *Railway Co.*, 122 Mich. 232 (81 N. W. 103); *Swick* v. *Cement Co.*, 147 Mich. 454 (111 N. W. 110);

*White* v. *Sugar Co.*, 149 Mich. 473 (112 N. W. 1125) ;
*Carr* v. *Railway Co.*, 152 Mich. 138 (115 N. W. 1068).

The judgment is reversed, and there will be no new trial.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.